## DeKalb-Sycamore Electric Company v. John McCartney.

### Gen. No. 4,657.

1. Verdict—*when not set aside.* A verdict clearly sustained by the weight of the evidence will not be interfered with upon appeal.

Action in case. Appeal from the Circuit Court of DeKalb county; the Hon. Linus C. Ruth, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906.

Carnes, Dunton & Faissler, for appellant.

James W. Cliffe and J. B. Stephens, for appellee.

Mr. Justice Willis delivered the opinion of the court.

This was a suit in an action on the case, by appellee, John McCartney, in the Circuit Court of DeKalb county, against appellant, DeKalb-Sycamore Electric Company, for injuries sustained by appellee in a collision between one of appellant's trolley cars and appellee's horse and buggy, near Sycamore, Illinois, on the public highway, and for damages to appellee's horse and buggy. The case was tried by a jury and a verdict rendered for $157.50, the amount of the value of the horse and the repairs to the buggy. Appellant made a motion for a new trial, which was denied, and judgment was entered on the verdict, from which this appeal is taken.

No error is argued, except that the verdict and judgment are clearly against the weight of the evidence. We will, therefore, consider the evidence, to determine whether or not it is sufficient to support the verdict.

On the morning of August 17, 1905, appellee drove from his home in the country to the city of Sycamore, and after transacting some business there, started in the afternoon to return home. He drove in a southwesterly direction from Sycamore on the public high-

way, along which the tracks of the DeKalb-Sycamore Electric Co. are laid, until about at the city limits, when one of appellant's trolley cars came into sight and frightened his horse so that it became unmanageable and while in this condition it turned upon appellant's tracks and was struck by the car coming from DeKalb. Appellant's street car tracks running into Sycamore from DeKalb lie along the north side of the highway until they reach the city limits of Sycamore and there they turn into the center of the highway by means of a reverse curve. The place where the curve lies out into the highway is partially planked so that the teams using the road cross upon them, and it was at this place that the collision occurred. Appellee was driving along the highway toward his home, and before he reached the curve his horse became frightened at the approach of the car and plunged from one side to the other and was struck by the car just as it turned from the north side of the highway to the center. The horse had both its hind legs cut off and had to be killed, and the buggy was damaged to the extent of $7.50. Appellee sustained little or no injury.

It is the contention of the appellant that it is not liable, for the reason that a street car company has the same right with its street cars in a street that an individual with a team has, and is only bound to use ordinary care with reference to the latter's safety; that a street car company is not responsible for injuries resulting from a team being frightened at the sight of the cars, unless it fails to use reasonable care to avoid the injury. This is good law, no doubt, as is the rule contended for in the cases cited in respect to the street cars having in some cases a superior right to that of a driver of a team.

The question in this case, however, is, whether the motorman in charge of appellant's car was exercising due care for the safety of the appellee under all the cir-

cumstances. The testimony for appellant shows that the motorman was running at the rate of from eighteen to twenty miles an hour when five or six hundred feet from where the collision occurred, and slowed down to make the curve to a speed of eight miles an hour. Appellee testified that the car was going at the regular speed just before it hit him, and other witnesses testified that the car was going at a high rate of speed when it reached the curve and that no warnings were sounded. The motorman testified that the horse did not move up to the time of the collision, while appellee testified that the horse became frightened several rods away, and he is corroborated by the witness Girden Dennis, who had stopped at the curve to let the car pass before crossing. Dennis also testified that when the car turned into the curve it went right towards the horse. G. H. Blackman, a witness for the defendant, testified that when a person or a team was placed in a direct line with the track beyond the curve in the highway, the car would appear to be directly approaching that person or team. It may be that the horse did, when a swiftly moving car was veering towards it, misjudge its direction, and in its fright jump into an apparent place of safety which was in fact directly in front of the car as it passed further along the curve; but if the motorman had had the car under his control in approaching and traveling along the curve, he would have been able to stop it, and thus have avoided the collision. If the motorman saw McCartney approaching more than a block and one-half away, as he testifies, knowing as he did that he was going into the curve to the center of the road, he should have had the car under his control, and thus have avoided the collision. It was evident that the car was going at a rapid rate of speed, else it would not have carried the horse and buggy so far as the proof shows it did. Appellant's motorman was bound to expect persons and teams would be using the

crossing, and was therefore bound to have his car under control so as to be able to avoid running against persons or teams lawfully using the streets. Both were lawfully upon the highway, and consequently appellee was entitled to the protection which the law allows him, that appellant would so manage its cars as not to negligently injure him. The jury were justified in finding that appellant's motorman failed to use proper care and to understand the real situation, and failed to act with due care in view of the conditions, as they would have actually appeared to him, had he been controlled by due circumspection. The testimony in this case is somewhat conflicting, yet in the absence of any erroneous ruling upon the admission of evidence, or in the instructions of the court, we are disposed to accept the finding of the jury as decisive of the facts. It is, therefore, our opinion that the evidence was sufficient to warrant the jury in finding as they did, and we find in the record no reason why the verdict and judgment rendered thereon should not be sustained.

The judgment is affirmed.

*Affirmed.*